The sixth case, the United States v. Ellis. Ms. Anthony. Good morning, your honors. My name is Jocelyn Anthony and I represent the defendant, Kelvin Ellis. This case comes to you today with two main issues that I'd like to articulate. The first is an attack on the constitutionality of a condition of mandatory supervised release that we believe mirrors the circumstances and condition that was articulated by this court in United States v. Capes. In which Mr. Ellis was prohibited from associating with persons having a felony conviction. In addition, your honors, if I do have time, I will also be addressing in my argument this morning the imposition of sentence that was given to Mr. Ellis in this particular case. Which was four months to run consecutively in each of the circumstances or each of the cases that he acknowledged responsibility. And then the additional imposition of additional conditions of supervised release. In this particular instance, Mr. Ellis in 2005 and 2006 was sentenced to a number of different sentences for violating federal statutes. Ultimately, the longest of which, sentenced him to 44 months in the Department of Corrections. He completed that time and in 2014 began serving his time of mandatory supervised release. On April 26th of 2017, a picture captured Mr. Ellis sitting at a table with a person that he'd known for 30 to 40 years, Mr. Oliver Hamilton. Mr. Hamilton, 20 days before that particular encounter, had been found guilty of a felony crime, a federal crime. And had been found guilty, but not yet sentenced. The very next day, on April 27th, the United States filed a petition to revoke his mandatory supervised release. And I do believe that it is important in this particular instance to really pay homage and pay close attention to the circumstances under which Mr. Ellis found himself arguing against this condition of mandatory supervised release. Because at the district court level, counsel did raise an issue with regards to whether or not that particular condition was constitutional. Ultimately, the district court at that time indicated that there were two reasons why it did not believe that the safety or strict liability concerns that this court articulated in CAPES were also applied or needed review with regards to Mr. Ellis. At that time, the district court indicated that the condition as applied does not raise the strict liability concerns mentioned in CAPES because Ellis was allowed incidental contact with felons and as evidenced by his monthly report. And he could seek permission for the above incidental contact, obviously, if it ran longer. One of the reasons why I want to pay a close attention to that particular articulation of the district court is because, first of all, incidental contact itself is not a right. Before we get too deeply into the weeds of the facts of the condition as applied to your client and whether that violates CAPES, we've got the Priestly decision, which was the alternative ruling of the district court in this case. And that holds that the main problem in Priestly, as here, is that the condition wasn't challenged in a timely way. You can't collaterally attack it on the supervised release proceeding. You've got to attack it on direct appeal or earlier. Your Honor, I will articulate that I don't believe that the circumstances here are the same that arise in Priestly. With regards to what happened in Priestly, Priestly was articulating that the evidence that was presented against him was not sufficient to have found that the particular condition in which he was alleged to have violated was sufficient. And in addition to that, I believe that it is distinguishable from this case because in CAPES, this court has already articulated that there are constitutional issues or a strict liability concern that exists. And I believe that this court can review that strict liability issue and whether or not it was applied against Mr. Ellis in an unconstitutional way under a plain air standard of review. Well, Priestly did address the merits of the question, but it also said initially that the main problem with the argument raised in that case about the unconstitutional condition is that the challenge was untimely, that it needed to be brought as an argument on direct appeal and not a collateral attack on the underlying condition at the time of a supervised release revocation hearing. I would add in addition to my argument the fact that Mr. Ellis was found guilty of his particular federal charges back in 2005 and 2006, and at that time the constitutional argument that this court articulated in CAPES wasn't available to him. Oh, it was available. It was available to anybody who wished to make it, just because it didn't get traction until CAPES doesn't mean the argument was unavailable. It was surely available. I'd argue, Your Honor, that with regards to availability, it had not been articulated by this court that it would... That's not necessary. The argument is always available to the defendant if he believes that there's a constitutional infirmity in one of the conditions of supervised release. Your Honor, I would indicate that for Mr. Ellis's particular position that the constitutional concerns should circumvent or trump the... The waiver? The normal waiver that exists. Because in this particular case, there was a directive that had been placed, or at least an articulation that the district court was aware of, that there was issues that also put an imposition on the district court to then be aware that there was a constitutional issue that existed with regards to a blanket condition that required that a person not associate with the felon. And I do think that that is distinguishable, because in other circumstances, the district court would not have been in a position where it could have instructed or re-articulated a condition to a defendant that was on mandatory supervised release, because at the time, the district court also knew that that condition imposed a strict liability standard. So I distinguish Mr. Ellis's circumstances and concerns from that, because this directive would have given the district court an opportunity to at some point articulate to him that the strict liability concerns, or to re-articulate or to give a directive to Mr. Ellis that incorporated or encompassed what I would consider more liberal, more appropriate condition of supervised release that he not associate with the felon, by either articulating a knowledge requirement or ensuring that some of the safeguards that were articulated in CAPIS that were suggested in United States v. Douglas or Thompson would then be there. In this particular case, none of those circumstances existed. Mr. Ellis essentially walks into a Hardee's, sees a person that he's known for the last 30 to 40 years who's not yet been sentenced, and then ultimately the next day, a violation or a petition for mandatory supervised release is filed against him. In addition to that, the district court argued that the reason why the strict liability concerns as addressed in CAPIS were not applicable to Mr. Ellis was because he had an opportunity to report incidental contact. And in this particular case, that is an error because Mr. Ellis did not have the opportunity to take advantage of reporting incidental contact. He was violated the very next day, and his reporting was not due until nine days later. And incidentally, he did report that contact as incidental. The government alleges nowhere the specific amount of time that they believe transpired when Mr. Ellis and Mr. Hamilton actually encountered each other on that day. Nor do they allege what is necessary for a person to take in consideration when going from an incidental contact to one associating with a person known to be a felon. Mr. Ellis had on previous occasions reported incidental contact, but no one ever questioned him or fared out exactly what that incidental contact was. We don't know whether or not he saw people at a picnic and said more than hello, or whether or not he engaged or encountered them while he was at church because he is a minister. We don't know whether or not he happened to see them at a football game and engaged in dialogue. But when he did have what he perceived to be incidental contact, he reported that incidental contact, and no one ever went back and told him that a conversation or circumstances that may have gone outside of what the purview of the government believed with incidental contact would have risen to the level of associating. Thank you, Senator. Mr. Smith? Now, good afternoon, Your Honors. Norm Smith here on behalf of the U.S. Attorney's Office, Southern District of Illinois. May it please the Court. First, to correct a significant error that the appellant unwittingly made, actually on April 6th, 20 days before, Oliver Hamilton had in fact been sentenced. Not crucial to the issues, but he, in fact, had been sentenced to 60 months, and it came up to this Court and was affirmed. So there was a delay in his being taken into custody? He was allowed to voluntarily surrender by the Court. And it was a fairly notorious case, was it not? Well, and that's the backdrop of some of why, actually, I made the decision to file the petition to revoke, in part because Oliver Hamilton was in the news, which was actually the front page of the paper, for whatever reason, mostly because the Bellevue News-Democrat disagreed with the government's loss calculations. But at any rate, it was in the front page of the paper, day in, day out. And in fact, Kelvin Ellis was supervised by Oliver Hamilton at the East St. Louis Township and worked at the East St. Louis Township, in part during some of the time that Oliver Hamilton stole the money that he sold from the crossings there. So that's part of the backdrop and the notoriety of it. I can tell you that, factually, the FBI, by happenstance, a particular agent happened to be eating at the Harvey's, pulled up, ordered his food, sat down, completed his food, and left. What are the chances of that? It's actually happened quite a bit, historically. Okay. They all frequent the same places? Just like we end up running across people in the most odd of places that we know. But at any rate, it happens quite a bit. So we've got two things as far as the due process challenge. Facial has applied to all defendants out there in the universe, and then as applied to Kelvin Ellis specifically. Now the problem is that counsel failed to raise at the district court level the as applied. So that was waived. And the judge specifically found that, and for one reference, in case 05-30010, document 86, starting on page 3. And the court specifically found that based on the evidence submitted to the court, even if Kelvin Ellis had made an as applied, it wouldn't have been successful. Wasn't Kappas a facial ruling? It was. Then you can't make an as applied argument. I actually don't think Priestley went far enough in looking at other circuits. I think that she could have at least made an as applied argument that would not have been waived. You can make an as applied argument if a statute is not facially vague, not the other way around. Actually, it was found to be facially vague in one circumstance on direct appeal. That's how to understand Kappas? Well, in that particular case. Not the condition as being facially vague, but the circumstances. No, the specific condition, it was in that case. But it held that as to future defendants also. Well, I get that part. But is it correct to read Kappas as a facial ruling about this condition of associating with felons? Or is it correct to read Kappas as an as applied finding of unconstitutionality in the context of that case? Because the way it's been described in other cases, including Douglas, that was as applied. Okay. So you rescind your statement a few moments ago that it was a facial  I do, Your Honor, only to the extent that it has been applied by other courts to apply to other defendants. And so I viewed it as applying to future defendants, but as applied to that particular defendant, if that makes any sense. Given that Mr. Ellis had been working under Mr. Hamilton's supervision for some time, no secrets about any of this situation, any indication that the Hardy's, that the encounter was anything other than incidental? Well, Your Honor, what we know is it was, for incidental, it has to be by happenstance, like incidental damages. We know it's, they're dressed up at the time. They're with a lady who was recently elected to district 189. It looked like a planned event. They don't casually just run into each other and say hi and, and go their separate ways. So they sit down. Maybe I'm not getting something here, but this, I have never seen this level of efficiency in enforcing conditions of supervised release. What's going on? Well, we in fact have a public corruption task force that communicates with me hopefully several times daily. Agents looking at a lot of different things. In the Metro East, I can tell you that the meeting with Calvin Ellis, with the agent, was by happenstance. However, he was on their radar for a number of reasons. And just to recap, it's in the record. In 1989, he was basically the assistant to the mayor of East St. Louis that predates these convictions. He did a bribery extortion, got 21 months. As soon as he was released, he became director, director of regulatory affairs of East St. Louis. These three convictions were, wow, he was director of regulatory affairs. And one was for another bribery scheme where he didn't report his taxes. That's 05-30010. That's a 2005 offense. The 05-30011, including trying to kill a confidential informant. And the 05-30044 was for conspiracy to commit election fraud as a precinct committeeman, while he was still director of regulatory affairs. He was on the radar of the FBI. So when they brought the circumstance to me, I quickly tried to do some research to see whether he had evaluated that condition in the past, found out that he was trying to help elect a convicted felon for state rep. While he had this condition in place, and numerous other times where he clearly knowingly violated it. This is not a strict liability concern, because you cannot violate a condition of supervised release unless you do so knowingly. In this particular case, he admitted the violation. So I think that kind of is the end of the story. I'd be glad to answer any questions. How big is Caseyville, Illinois? I'm sorry? How big is Caseyville? What's the population of Caseyville, Illinois? I don't know the population. There's three fast food restaurants and an interstate. One stoplight? Well, on a side road, there's a stoplight, but the interstate just cuts on through. A church? Well, there is a church in Caseyville. Yes. 4,245. In 2000? In 2010. Thank you. Thank you, Mr. Stewart. I think your time has expired, but you may have two minutes. Thank you, Your Honors. I do appreciate that. I want to note that Mr. Ellis is a minister, and every occasion I've ever seen him, he's wearing a suit. So the articulation that, for some reason, that when they go into this Hardee's it was planned and the government can prove that it was planned simply because he's wearing a suit and this other gentleman who is also close to 70 years old is wearing a suit is not probative information. This picture made its way to the front page of the Belleville News-Democrat. So what do we do with the fact that the violation is admitted? I would say this. Mr. Ellis, and it is found in the record, indicated that he did not intend to violate the condition. But because of the articulation of the district court with regards to whether or not there was any way to impose or impute or whether or not even the district court had any thoughts regarding his knowledge, Mr. Ellis decided to acknowledge that the government could prove what they alleged, and that was he was present at a Hardee's with a person who had been convicted. And so Mr. Ellis, though, at the time did indicate, Your Honor, it was not my intention to violate a condition of supervised release or a term of probation. Mr. Ellis had been on probation and was sentenced to mandatory supervised release for three years. He was at two years and ten months. And at the district court level, the government did attempt to wage a number of other circumstances where they alleged that he had violated this particular condition but had no previous violations that had been filed with the court. If Mr. Ellis had been in violation of these conditions, how was he supposed to monitor or regulate his own behavior if his probation officer had never made known to him that particular information? And with that, Your Honor, arrest. Thank you. Thank you, Mr. Smith. Ms. Anthony, the case is taken.